Mr. Bruce Lee, we thank you for being here. I know you had a lot of difficulty in your travel plans. It wasn't your fault, so we appreciate your diligence. I want to thank you all for having the court today. May it please the court, I'm here on behalf of Manuel Lopez Ventura. Mr. Ventura is a lawful permanent resident seeking admission in the United States and was found to be inadmissible and deported due to a conviction for ABC Chimichanga. I thought the conviction was for marijuana. Under the Louisiana statute, it's for marijuana, but ABC Chimichanga is in that statute. Also, under the categorical approach in immigration laws, it's the least culpable means to commit the crime that the court has to look at. The underlying facts did show ABC Chimichanga, but the court and the BIA in this decision found it didn't matter because it held to the time of conviction. Do you know what the order of commitment said and the plea was to marijuana? No, Your Honor. It stated to 4966, which was a possession of marijuana. The statute included ABC Chimichanga, which was not a federal controlled substance. Further, the immigration court did not believe it was marijuana. There is a waiver in immigration court for possession of 30 grams or less of marijuana. Mr. Ventura sought that with the court, and the judge found that he could not seek it because the drug was ABC Chimichanga. So the court actually found in the immigration proceeding it couldn't have been marijuana. There's a waiver for marijuana, and the court would not allow him to have a waiver in this matter. Congress has not decreed an alien can be deported because he deprived knowledge that a substance makes him deportable after he possessed the substance. It is not an Immigration and Nationality Act. It is contrary to basic fairness. He was arrested for this crime in August of 2014. At that time, ABC Chimichanga was not under the federally controlled substance. They changed that law in January of 2015. They gave it no retroactive effect in the Immigration and Nationality Act. My client pled guilty in March of 2015, two months after it was changed to the crime, and he does have a conviction for that. He pled guilty to possession of marijuana. He pled guilty to the statute, which is labeled possession of marijuana. But the Immigration Court, as well as the criminal court, found it was not marijuana. Okay. If it was marijuana, Your Honor, again, we could have had a waiver, and he would have been allowed in the U.S. in the court in their decision. Because of the amount? Because it would have been marijuana. Marijuana is the only controlled substance in the Immigration and Nationality Act that is allowed a waiver. So because the judge found that it was ABC Chimichanga, the consequences are my client will never be allowed back in the United States because there is no waiver for that, and that's what the Immigration Court found in here. So while the statute is that, the least culpable means of that and what the court found was it was not marijuana. The statute does have, when it was passed back in the 80s, does have some clear retroactivity language. And then the statute imports these schedules as qualifying offenses or disqualifying offenses. So why isn't the language in the statute giving a clear retroactive effect enough? The ADAA that was passed in 86 has retroactivity as to the conviction. But the conviction still has to be for a controlled substance, and they never gave retroactivity to the controlled substance. It would be essentially if you added alcohol, Tylenol, P.M., or tobacco on a federally controlled substance, it would violate inherent fairness to go back and start deporting people for violating the Federal Controlled Substance Act, even though those crimes were not at the time of commission. What about, though, instead of adding to a schedule, Congress amended the statute and added a new category of offenses, say, anything involving opioids. Would that be retroactive because of the statute's broader retroactivity language? We don't believe it would, or I don't believe it would, Your Honor. And the reason is because Congress could make it retroactive. I want to be clear about that. But if the amendment doesn't say anything about retroactivity, we've just added a new offense statutorily. Yes. Wouldn't it be swept in by the general statute's retroactivity? Again, we don't believe the controlled substance would because it is not explicitly stated. It is explicitly stated the conviction is retroactive but not the controlled substance, and it never states that. Congress is very familiar with how to make laws in the Immigration Act retroactive. Under 237.8283, the aggravated felony statute, they do make that retroactive at any time. You've been convicted of an aggravated felony. So they have made retroactive intent in the Immigration and Nationality Act. Congress just did not do it here. And then also under 212.82a little i, which was the inadmissible offense my client committed, it specifically states that an alien convicted of, admits to have committed, or admits to the elements of commission is removed for a controlled substance. So in that statute, there is no retroactivity with it that Congress has intended to. And, again, they do know how to point out retroactivity. In Langreth, the court consideration of fairness dictate that individuals should have an opportunity to know what the law is and conform to their conduct accordingly. In this situation, the conduct of my client occurred before he was removable. The conduct at the time did not violate the Immigration and Nationality Act in August of 2014, and he could not have been removed or found admissible from a court on that date. What do you want? You want a remand into the BIA? We would like the case terminated and my client allowed to enter the United States under a lawful residence. No, but there are all these issues out there. The best you could probably get would be a reversal. Yes, we would like a reversal. What would that do? That would send it back to the BIA, right? Unless the court terminated the proceedings altogether. We would like, I mean, I would like a termination. We would like a termination, but we would take a reversal to the board to apply the correct law in this case. We don't believe they have. But, for example, the issue of what your client was actually convicted of, that could be something sent back? Yes, Your Honor, it could, but, again, the BIA found that it didn't matter if it was marijuana or ABC chimichanga. That he was removable because it was a violation of the Federal Controlled Substance Act at the time. The trial court, the immigration judge at the time, found it was ABC chimichanga. My client admitted it was ABC chimichanga. Further, this court has held that the least culpable means to commit the violation is what the immigration judge should look at. That is why we do not believe a reversal and a remand would be necessary but a termination because the least culpable means to violate 4966 at the time did not violate the Immigration and Nationality Act. Further, in Landgraf, the Supreme Court considerations of fairness dictate individuals should have an opportunity to inform their conduct. They specifically said conduct, the Supreme Court did. During the conviction, there is no conduct by the client. In this country, you have a right to remain silent. You do not have to testify in trial, and there's no conduct that takes place during a criminal plea. The conduct is when you're arrested. That's when the commission of the crime took, and while we believe that this court should find the commission of the crime is when that violation of the Immigration and Nationality Act should occur. It is not during the conviction stage. As the board and the judge found, it didn't matter if it was marijuana or ABC chimichanga because the conviction took place after it was a federally controlled substance. However, the Supreme Court disagrees with them, and in Landgraf, they said that the conduct should conform accordingly. This court should also, in Vartelis, the court stated the statute must be given retroactive effect if Congress specifically stated to such, and in nowhere in the Immigration Act does it state that this conduct is retroactive. It was not done. Congress did not bring that up. I mean, did not specifically point, did not specifically give that language, and if they did, it is still impermissible to give a retroactive effect. Does Congress have to give that, or in adding to the schedule, could the agency give it that retroactive effect? Vartelis states that Congress has to give it the retroactive effect. The only retroactive effect Congress gave in the ADAA back in the 80s was to the conviction, not the controlled substance. So if they did not specifically give retroactive effect to that controlled substance, again. So you don't think a regulation can give that retroactive effect? I don't think, I don't see it here, but I'm just asking hypothetically. You don't think a regulation could give retroactive effect? I do not. I believe the Supreme Court was very clear that Congress has to give the retroactive effect, and I don't believe the agency can do that. If Congress does give a retroactive effect, it still is impermissible under Vartelis if it attaches new legal consequences, and there's no consequence greater than deportation. My client is never allowed back in the United States based on this Court's ruling. They did not grant him an opportunity to waive it under 212H, which is waivable if it's marijuana, Your Honor, but it's not under ABC Chimichanga because there's no waiver. So the consequences, the new legal consequences that affected the retroactivity that the Board has applied are grave. He is never allowed back in the United States of America. Further, Your Honor, what do you do with the argument that under the categorical approach we look to convictions and not conduct? Your Honor, the categorical approach does state that, but it is not stated in a vacuum. So even the categorical approach does go to the conviction, not the conduct, and you do use the least culpable means necessary for that conduct, but it still has to be a violation of the Immigration and Nationality Act at the time. At the time of the conduct or at the time of the conviction? At the time of the conduct, and that is what the Supreme Court has held. St. Cyr, they've suggested that retroactivity has only been found in statutory language that was so clear it could sustain only one interpretation. The categorical approach, we do agree, Your Honor, where the actions are unnecessary, but in other provisions of the INA, the court has looked to commission and only to commission. This court held in the Cazelle case in 2015 under Section 240AB of the Immigration and Nationality Act. The immigrant in that case was not able to apply for cancellation of removal, and the reason being because the commission of the crime stopped the time, not the conviction, and that's what the court has held in that case. So we're asking for consistency with that. I'm sure in that one, the immigrant in the department flipped sides, and they were probably going for the conviction, but that's not what this court ruled in that case. So under Section 240 of the Immigration and Nationality Act, they also referenced commission. So we believe that the commission of the crime is when those set of events happen. We believe the Supreme Court has shown that over and over again. They talk about actions and conduct. But you would still use the categorical approach to see what the drug was and when the crime occurred? Yes. You would use the categorical approach for that. You would use the categorical approach in assessing the situation. It would be the actions, the least culpable means to find out the actions. But if those actions were not a violation of the Immigration and Nationality Act, it is at the time of the commission, it is given retroactive effect without Congress's intent to do so. Because it wasn't listed? It was not a listed federally controlled substance at the time. Again, I'll point back. If they put Tylenol PM on the Federally Controlled Substance Act, and you didn't know it at the time, and six months later they come to your house and pick you up to deport you, it violates inherent fairness. It's not Congress's intent, and the Supreme Court has held that Congress has to give those statutes retroactive effect. So we are, of course, asking for termination in this matter, because at the time my client committed the actions which led to his deportation, there was no violation of the Immigration and Nationality Act. If the Court does not find there was no violation, if the Court does not find that, we would ask the Court to remand it to the Board with consistent rulings of this panel. All right. Thank you, Mr. Bruce Lee. You've saved time for rebuttal. Mr. Tennyson. May it please the Court. Robert Tennyson for the government. This Court should deny Mr. Lopez-Mintura's petition, because his conviction for possession of either marijuana or abshamanaca is a controlled substance offense under 8 U.S.C. 1182, A2A I-2, and as a result he's inadmissible. It doesn't really pass the smell test, though, does it? I mean, look at the Tylenol example as a fair one. Well, the Tylenol example is a strange one, because he's not going to be convicted previously under State law for possession of Tylenol, right? Or he's not going to have that prior conviction. He's only going to get convicted for if the Fed's listed and the State does not. Well, then he may be convicted under Federal law, but that's only, you know, that's only for conduct that occurs after listing of Tylenol. So there's no possibility that he's going to be mysteriously and surprisingly convicted for, I guess what, for an offense that has been covered by, you know, Tylenol, unless he's done something that has already violated State law in this case. By the same token, that sort of raises the odd notion, the odd nature of this retroactivity claim. I mean, imagine he's right, or imagine that the ---- I don't know that it's odd at all to say that you can't suffer significant legal consequences for something that wasn't unlawful at the moment that you committed whatever act it was. Right. But at the time he was convicted, at the time he committed the act, it was a violation of State law. Subsequently it becomes a violation of Federal law. Then he's convicted. He can choose to plead. He can attempt to have his plea be something that would allow him to have relief, marijuana, if he had pushed ahead with that. Or he could have gone to trial on the case to see, you know, to have an indication of what kind of substance it was. In fact, in this Court's cases, I mean, take Lucas most recently. But if he was in fact guilty, which most defendants are, the ship had sailed, and he didn't know at the time that there was a severe immigration consequence attached to his behavior. Sure, he knew it was against State law, you know what I mean? But he doesn't know there's this severe immigration consequence. He doesn't know the severity of the immigration consequence at the time he commits the act. He does know by the time he's being convicted. But it's too late. But that's also the case in cases like Lucas, where the individual pled guilty in December after there's no indication of when his conduct took place, but he pled guilty. And it's the guilty plea, but it's that moment to make a determination. How do you get around Vartelis? I mean, Vartelis, the Supreme Court, because the dissent argues, well, it's just was — it was all at the time he'd left the country. Then he knew. But the Supreme Court says, no, when he committed the — it was a counterfeiting crime in that case, counterfeit securities. The Supreme Court says that's the operative time for this notice concern. Right. But he had also been convicted of the counterfeiting crime as well before — before the change under OIRA. The counterfeiting crime, if I remember correctly, occurred in 1994. He was convicted then. And he went in and out of the country several times before the law changed in 1996. So it is — you — he can still take actions up to the time of conviction. And what's peculiar about this is that the immigration statute itself, the act under the 1986 act, the ADDA, or the provision, which is reflected in 1182A2A, specifically says that, you know, the individual is inadmissible if they are convicted of — and then all of those other acts. It's that conviction that makes them — that makes them inadmissible. That's the hinge. That's when it attaches. An individual who is committing a State law offense, that's right. At the time, they may not know what happens with a Federal offense. But up until the point of that conviction, when the immigration consequences attach, they can take whatever step — you know, they can take whatever steps. They may be limited steps, but they can try and take steps to ameliorate the consequences of their acts. And that's the reason why I think this is a peculiar case. I mean, we have a statute that says, from 1986 on, that if you've been convicted of a controlled substance offense, you're inadmissible. That means when you go out and you — and not only when you commit the conduct in an anomalous case like this, where someone's conduct has actually involved something that's on the State schedules but not the Federal schedules, if that changes, you have the opportunity to make — to change your behavior up until that moment when you — up until that moment when you either plead guilty or you go to jury trial in an attempt to avoid the immigration consequences of those actions. Like what would he have done? He could have, instead of pleading. I mean, he could have made it — he could have sought a plea. And he sought a plea which says marijuana in it, correct? But it refers back to the counts in the — the counts in the information, which refer to ab shemenaka. What is the government's position on what the guilty plea was for? Is it for regular marijuana or for the synthetic? I — I couldn't tell. You didn't really push that — The boards didn't make a decision, did it? It sort of said it could be either one, and it doesn't make a difference. And so if it's marijuana, it's clearly within the control — you know, it's clearly a controlled substance. And then if it's ab shemenaka, that change brings — you know, the subsequent change under — in the schedules, by the time he was convicted, that brings it under the — that brings it under the Controlled Substances Act. So either way, he's going to be — he's going to be removable. So it didn't matter that they didn't decide? It didn't matter that they didn't decide, ultimately, at least insofar as removability is concerned. So — So there's no sense in remanding to ask him what it — what their decision should have been? If this Court thinks it is necessary — if the Court thinks that there is some reason why there is a difference between him being convicted of possession of marijuana and being convicted of possession of ab shemenaka. If that — if it matters, then the Court should certainly feel free to remand. But the Board here found that it didn't matter because the removal consequences were the same. And he did not exhaust any claim with regard to, say, for example, relief from removal and those consequences. So going back to the — to that retroactivity question, and I believe he — I believe he was convicted for synthetic marijuana happened in 2005, years ago. Years ago. The conviction actually happened before. Then you would say there's a retroactivity problem. Then I would say that there's not even — he's not even removable under the categorical of retroactivity. Because the conviction is the operative event. Because the conviction has to be — correct, Your Honor. Even though the broad retroactivity language you're relying on in the statute says before, during, or after. Or after, right. It looks as though that language sort of would — I don't want to pigeon in the Board here. And the Board may come back and — because they haven't addressed what would happen if sometime between a conviction and the time the government seeks removal, there is a change that puts someone on the schedules. But it would seem that if the control — if, as the Board says here,  that anything subsequent to that is maybe off the table. So going back to this as well. So even if we don't sort of put the locus of this determination as to whether or not retroactivity applies on the 1986 Act, as I discussed earlier, there is also his ability to have changed, you know, sort of his circumstances up to the conviction. So even if we look at, for the purposes of retroactivity, the change in the schedules, one, we have what? Section 1751c of the ADDA, which says this is to apply before, on, or after. And it would make a strange — what? It would make for a strange retroactivity provision if someone who had been convicted of an offense before 1986 involving a particular controlled substance could be removed. But all of these changes, these incremental changes to the scope of the schedules somehow would move people on and off and allow them to have retroactivity challenges. And second, again, retroactivity, you know, only adheres when what? The transactions or, you know, the transactions or one's obligations are complete. When, I guess, what? The last step has occurred in the pattern — in the sequence of things that would create a vested right or an interest or an expectation, and that's going to be at the time of conviction. Because if you're looking at 1182, it tells you that the consequences occur at conviction. You can take some acts up to that point. I believe the Petitioner didn't raise anything with regard to the timing of the categorical approach, that is, whether the categorical approach adheres at the time of commission or conviction. At least in his brief, he appears to have weighed it. He stated something about it in his, what, statement of issues, but didn't go into it in the brief. And I believe here, at least as I heard it, he didn't go into that and argue that the time for the application of the categorical approach is sometime before the time of conviction. So unless the Court has specific questions about that. I don't think it's right directly about that, but I understand you're raising the categorical approach to say that's what the statute makes the key. As it matters to statutory interpretation, conviction is the key. I understand that argument. But you also seem to raise sort of workability concerns with the Petitioner's approach, which I have a hard time seeing with the issue of the timing, of saying, well, it's clear when a conviction occurs. It might not be clear when the conduct occurred. But with the categorical approach, you can consider charging documents. And every, I mean, indictments or other charging instruments come in all shapes and sizes. I mean, it's the date of the offense because it's relevant for statute of limitations, it's relevant for double jeopardy. So I don't see why it would be so hard to figure out the date. And even for a continuing offense, obviously, if it continued into the, after the enactment of the new schedule, there wouldn't be retroactivity. Right. Exactly. So if you do have those charging documents, so if you do have the complaint or the information, something like that, or the indictment, you're going to have that date. That's correct. But for immigration purposes, you don't need that. And there are often going to be, it's often going to be the case that the documents are so old that all you can get is effectively some sort of minute order or determination. But they wouldn't be so old in this scenario because it's only going to involve a fairly recent conviction. In this case, it only involves. A change in the schedule. Right, Your Honor. In this case, it only involves a very recent conviction. But in other cases, it may involve an old conviction from back in the, from back around to. But how would it if you're saying, you said it wouldn't apply to if the conviction occurred. It would only, this issue would only come up in the Board's view if the conviction postdated the recent change to the schedule. Right. And those are very, those are very rare cases. Well, if it's the categorical approach, that's not necessarily the case, right? I mean, you have this Federal set of schedules that sort of shrink and expand and shrink and expand over time. How often are new substances added to the schedule? Empirically, I don't know. But anecdotally, it seems that they list and delist substances pretty regularly. And so you would have this growth and shrinkage. There are drugs from the 70s that persist into 2000s and then they finally get delisted when everyone realizes, you know, they have no, they have no deleterious effect. At the same time, there are drugs, you know, there are opioids that suddenly pop up on the schedules on an emergency basis and then they're subsequently listed. So you do have this stretchiness to it. And the thing is, is that the way the categorical approach is supposed to work is we're supposed to be able to look at a particular time, right? And so say, for example, we've got the stretchy schedule and we fix it in 2000 when, say, someone's been convicted of a substance, you know, under a particular statute. And then we compare it then at that. So that's going to be the way in which this works. So let's assume that someone's substance was, that someone was convicted under a statute which would have been, would have met, categorically met the federal definition two days before his conviction. And then at the time of conviction, the, you know, I guess what, the federal government delists the schedule and so it shrinks, right? And so you've got an overbroad, you suddenly have an overbroad state statute. Again, it's going to be at that time. I mean, for us to be able to evaluate it, we may not have at that time an information because it's a really old conviction, but we may, but we do have the conviction document. Otherwise, we can't come in and charge them. So we're going to be able to use that to accomplish that task, even if we don't have the old, you know, sort of have the information or complaint or something like that. So this is a problem that will, that will spring up. I mean, that is a continual one that can spring up under the categorical approach, not just an anomalous one that occurs when someone, when you have this rare case in which someone's actual substance is something that may, that was not on the Federal schedules at the time they committed the act and then subsequently becomes added to the schedules when they're convicted.   All right, thank you, Mr. Tennyson. Mr. Bruce Lee, you've saved time for rebuttal. Yes, Your Honor. May it please the Court, Your Honor. The government's argument that he could have taken actions after the commission with the plea simply doesn't hold weight and it gives a very slippery slope. If he didn't take any actions and didn't take a plea and sat there and exercised his constitutional right to remain silent and a jury found him guilty, it would still be a conviction. If this Court does not rule about the commission but the conviction, it really doesn't hold weight. The government, the respondent can take no action and have the commission. Furthermore, to say that they have no possibility of violating a Federal-controlled substance unless there is a state conviction is simply not true. At a recent immigration panel, we discussed the possibility in states like Colorado and California that have legalized marijuana that are still under the Federal-controlled substance. 212A2 says any alien that is convicted admits to the commission or admits to elements of the commission is removable under 212A2. So a conviction is not required to be inadmissible from the United States under the Immigration and Nationality Act. So to say he had notice for the state conviction, he shouldn't have pled, and it could have popped up later on the Federal substance is simply not true. Marijuana is one of those statutes that in some states are illegal, but it is still a violation of the Immigration and Nationality Act because it is still on the Federal-controlled substance. And in those and under the INA, the conduct of possessing marijuana can still render you inadmissible from the United States. To the question, the immigration judge found in page 6 of his decision in the general, as discussed, respondent was convicted of possession of marijuana. The police report indicates he possessed 3 grams of synthetic marijuana. The respondent, the implementing regulation recognizes marijuana and ABC chimichanga as a different drug, and in the absence of a respondent suggesting that ABC chimichanga falls within the definition of marijuana, the court cannot conclude he was convicted for a single offense of marijuana and he's not eligible for 212H relief. While the board never got to that, the immigration judge did. He found he's not eligible for 212H waiver. If the court did seek to remand, we would still like, we are asking that this court remand, but with the condition of the retroactivity to ABC chimichanga because we're confident the board, as well as the immigration judge, has found it was. And even though the board said it didn't matter, we're going to go to the conviction of that document, we would still like, we're asking this court to please add that if it is ABC chimichanga, the case be terminated because the immigration judge got to that. We're confident the board will get to that same decision if they did have to. It was the appeals from the BIA, not the immigration judge. I realize that, but the immigration judge made a finding that the board did not address. And this court standard is review. We believe they abused their review procedure when they did not recognize that it was ABC chimichanga. But it would go to the data commission. We're asking this board to look, but if this board feels, if this panel feels necessary to remand it to the board, we're asking that it still be in connection with the retroactivity of ABC chimichanga because we are confident that's what the board, if they did have to make that decision, they would come up to the same decision as the immigration judge did in that case. Even though they missed it the first time? The? BIA. Yes, even though the BIA missed it the first time, we believe they would find it based on the decision from the judge that they reviewed. If the panel has no further questions, thank you all for the presentation. Thank you, Mr. Bruce Lee. Your case is under submission and the court will take a brief recess.